James D. TOLLEY and William Lowe, et al., Appellants,

v.

GENERAL ACCIDENT, FIRE AND LIFE INSURANCE CORPORATION LTD., et al., Appellees.

Supreme Court of Tennessee.

July 30, 1979.

**648**

John F. Kizer, Milan, for appellants.

Lloyd S. Adams, Jr., Adams, Ryal & McLeary, G. Griffin Boyte, Warmath & Boyte, Humboldt, for appellees.

## OPINION

FONES, Justice.

This is an indemnification suit brought pursuant to T.C.A. § 50–915 by plaintiff General Accident, insurer of plaintiff H & M Construction Company, to recover workmen's compensation benefits paid to James Romans, an employee of defendant Tolley & Lowe, a Tennessee partnership and a subcontractor of H & M. Defendant Auto-Owners Insurance Company insured the workmen's compensation liability of Tolley & Lowe, and the policy was procured through defendant Pickard Insurance Agency.

The construction contract was performed in Arkansas and $1,609.75 was paid to Romans, based upon benefits provided by the Arkansas Workmen's Compensation Act. Auto-Owners was not licensed to write workmen's compensation insurance in the State of Arkansas and asserted that it was not liable to its Tennessee insured for a workman's compensation accident that occurred in Arkansas and that its agent Pickard had no authority to issue a certificate of insurance to H & M to the effect that Tolley & Lowe's workmen's compensation liability on the Arkansas job was insured by Auto-Owners.

The facts were stipulated, from which the trial judge reached the legal conclusion that Romans' contract of employment with Tolley & Lowe was an Arkansas contract. In effect, that finding precluded extraterritorial application of the Tennessee Act, because the contract of hire was not made in this State. T.C.A. § 50–917. The result was that the trial court awarded plaintiff a judgment against Tolley & Lowe on the original complaint, dismissed Auto-Owners, and a similar award in favor of Tolley & Lowe was made against Pickard, the agent.

Our legal conclusion from the stipulated facts differs from that of the trial judge.

After Tolley & Lowe entered into the painting subcontract with H & M, it sent its superintendent to Arkansas to hire painters.

On February 14, 1975, James Romans, a resident of Missouri, sought employment as a painter at a higher wage rate than the superintendent was authorized to pay. The signed statements of James Tolley and their superintendent, J. C. Mitchell, set out the facts and circumstances under which Romans' contract of employment was entered into. James Tolley's statement reads as follows:

"[O]n Jan. 30, 1975 I sent Mr. J. C. Mitchell our job superintendent over to Mountain Home, Ark. to complete the job which consists of painting the interior and exterior of this plant. I instructed him to employ men from that area, and on Feb. 14, 1975 a Mr. James H. Romans from West Plains, Mo. went to work for us, he came on the job and talked with superintendent, and he wanted more money than Mr. Mitchell was authorized to pay, so this man called me at Milan, Tenn. and told me he needed to work but couldn't work for what Mr. Mitchell had offered him, he told me he was a past house painter and out of work and I decided that I would hire him without making application with us, then I called my superintendent Mitchell and told him I had hired him and he would be on the job next day at $4.00 per hour."

J. C. Mitchell's statement reads as follows:

"I was instructed to hire men from that area [Mountain Home, Arkansas] if I needed them as me and another employee from Milan, Tennessee was doing the job O.K. but we got behind and I was going to hire one guy to help us. A Mr. Romans came on the job looking for work and he wanted $3.75 or $4.00 per hour to work. Mr. Tolley and Mr. Lowe had not given me authority to hire anyone at this wage so I told him I couldn't hire him at that price and told him he would have to get in touch with Mr. Tolley or Mr. Lowe and he left and the next day Mr. Tolley called me and told me he had hired Mr. Romans by phone and he would be on the job the next day."

Mitchell did not hire Romans in Arkansas, because he had no authority to hire at that rate of pay. Romans telephoned Tolley in Milan, Tennessee for the avowed purpose of making an offer to work for the partnership at a $4.00 hourly rate and his offer was accepted by Tolley in Tennessee. "Where an acceptance of an offer is given by telephone, it is generally held that the place of contracting is where the acceptor speaks his acceptance." 16 Am.Jur.2d, *Conflict of Laws*, § 37 (1964); *accord*, Restatement of Conflict of Laws § 326, Comment C (1934). We hold that the contract of hire between Tolley & Lowe and Romans was made in Tennessee and that the extraterritorial application of the Tennessee Workmen's Compensation Act was thereby invoked. T.C.A. § 50–917. *See Basham v. Southeastern Motor Truck Lines, Inc.*, 184 Tenn. 532, 201 S.W.2d 678 (1947); *Smith v. Van Noy Interstate Co.*, 150 Tenn. 25, 262 S.W. 1048 (1923); *Hudnall v. S & W Constr. Co.*, 60 Tenn.App. 743, 451 S.W.2d 858 (1969).

It is immaterial that Auto-Owners was not licensed to do business in Arkansas. The express terms of T.C.A. § 50–917 renders an employer liable for an injury sustained by an employee while working outside the territorial limits of this State, when the contract of hire was made in this State. Auto-Owners insured Tolley & Lowe's liability under the Tennessee Act, which included that extraterritorial liability.

Auto-Owners cites *Tidwell v. Chattanooga Boiler & Tank Co.*, 163 Tenn. 420, 43 S.W.2d 221 (1931), *aff'd on rehearing*, 163 Tenn. 648, 45 S.W.2d 528 (1932), in support of its position that all of the parties are bound "by their election of Arkansas compensation law" and cannot now proceed under Tennessee law.

We think *Tidwell* may be readily distinguished from this case. In *Tidwell* the employee's widow proceeded directly against the deceased husband's employer in Ohio, and obtained an award, that was being paid by the Ohio Insurance Fund, after the Chattanooga employer refused to recognize and pay the award. The suit in Tennessee

was necessarily brought by the fund in the name of the employee, who had made the election to proceed in Ohio.

In the instant case, plaintiff H & M, as principal contractor, has the statutory right under T.C.A. § 50–915 to proceed in its own name for indemnification against the party primarily liable for compensation, having paid an obligation for which it was secondarily liable as "statutory employer" under that Code section. T.C.A. § 50–915 was not involved in *Tidwell*, and the reasoning employed to reach the result therein is not applicable to this situation.

The stipulation reveals that Romans filed a claim with the Arkansas Commission, that his claim was presented to Tolley & Lowe,
> "who, in turn, submitted the claim to Pickard under the provisions of their Auto-Owners policy. Auto-Owners refused to honor the claim."

In our view, Auto-Owners was liable for the compensation due Romans under the Tennessee Workmen's Compensation Act. When it rejected the Arkansas claim, without offering to pay compensation under the Tennessee law, it created by its own act the necessity that the principal contractor, H & M, pay Arkansas compensation. Having done so it cannot avail itself of any defense based upon Romans' election to first proceed in Arkansas.

There is no basis in this record for imposing liability to any of the parties upon Pickard, the agent.

The decree of the trial court is reversed and set aside, and this cause is remanded to the trial court for the entry of a decree awarding a judgment in the sum of $1,609.75 against Tolley & Lowe and Auto-Owners and providing that as between the judgment debtors Auto-Owners is primarily liable and Tolley & Lowe secondarily liable; General Accident may have a judgment over against Auto-Owners if it pays all or any part of the judgment, and dismissing all claims against Pickard. Costs of the cause are adjudged against Auto-Owners.

BROCK, C. J., and COOPER, HENRY, and HARBISON, JJ., concur.